IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:12-CR-00004-RLV-DSC-1

UNITED STATES OF AMERICA, )
)
      Plaintiff, )
)
v. ) **MEMORANDUM AND ORDER**
)
HUNTER GAITHER, )
)
      Defendant. )
)

**THIS MATTER** is before the Court on Defendant Gaither's Motion to Dismiss, filed April 28, 2012. (Doc. 12.)

## I. FACTUAL AND LEGAL BACKGROUND

Defendant Gaither was charged in a single-count Bill of Indictment with knowingly failing to register as required under the Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 109-248, §§ 101–155, 120 Stat. 587, 590–611 (2006), in violation of 18 U.S.C. § 2250.

On December 12, 1983, Defendant was convicted in Queens County, New York, of Sodomy in the First Degree, in violation of N.Y. Penal Law § 130.50. As a result of this conviction, Defendant is required to register under state law as a sex offender and to confirm his registration with a local law enforcement agency every ninety days. Defendant registered as a sex offender in February of 1996. The registration form he signed at that time, shortly before his release from prison, included the following warning: "You *must* notify your local law enforcement agency and DCJS [the New York State Division of Criminal Justice Services] in writing of any change of home address within 10 days before you move." (Doc. 12 at 1; Doc. 15

1

at 1.) Assessed at risk level three, Defendant was further required "[to] verify [his] home address once a year [in this same manner ]for a minimum of 10 years or until the [New York Supreme Court, Queens County] relieve[d him] of this obligation." (Doc. 15 at 2; Doc. 15-2 at 3.)

On July 27, 2006, SORNA became effective. SORNA imposed on convicted sex offenders duties to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). The Supreme Court has recently held that SORNA's registration requirements do not apply to sex offenders convicted before this date until the U.S. Attorney General so specifies, *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012), and the Attorney General has issued an Interim Rule applying SORNA to all pre-Act offenders, 28 C.F.R. § 72.3.

Mr. Gaither maintains a long-term residence in New York, and while living at this residence "full-time," he maintained his registration as required. However, Mr. Gaither's mother, a resident of North Carolina, became ill and infirm, and beginning around April of 2011, Defendant spent most days living with his mother, returning to New York every ninety days for a period of roughly two weeks in order to maintain his registration and to confirm his registration in person. (Doc. 12 at 2; *cf.* Doc. 15 at 2.) On July 27, 2011, Defendant was arrested in Mooresville, NC, and later convicted of misdemeanor larceny and sentenced to eighteen months of probation. (Doc. 12 at 2.) The Government notes that during the booking process, Defendant represented that his home address was "502 Tabor Road, Olin, NC 28660." (Doc 15 at 2.)

Defendant now moves to dismiss the Bill of Indictment, arguing (1) that he was not required to register under North Carolina law at the time of the alleged offense and therefore could not violate SORNA; (2) that Congress exceeded its constitutional authority by delegating

2

to the Attorney General the determination of whether SORNA would apply retroactively; (3) that retroactive application of SORNA violates the Ex Post Facto Clause of the United States Constitution; (4) that SORNA violates the Commerce Clause; and (5) that Defendant did not receive constitutionally required notice of SORNA's registration requirements. (*See generally* Doc. 12.)

## II. ANALYSIS

A. The Existence of an Independent Federal Mandate to Register

Defendant first argues that he was at no time subject to any registration requirement in North Carolina and, therefore, cannot be convicted of violating SORNA. The Government primarily argues in response that an independent duty to register exists under SORNA as a matter of federal law. Accordingly, the Government need only prove that Defendant is required to register under SORNA and need not address the requirements of North Carolina's registration laws.

Our Fourth Circuit Court of Appeals, in an opinion authored by Judge Niemeyer, has held that SORNA's registration requirement is indeed independent of the requirement imposed on the states to implement the Act's standards. *Kennedy v. Allera*, 612 F.3d 261, 268 (4th Cir. 2010); *see also Applicability of the Sex Offender Registration and Notification Act*, 72 Fed. Reg. 8894, 8895 (Feb. 28, 2007) ("SORNA directly imposes registration obligations on sex offenders as a matter of federal law . . . ."). Because SORNA imposes registration obligations directly on sex offenders, in *Kennedy*, the lack of a state registration law did not relieve the sex offender of his duty to register. *Id.* at 263.

Although the matter of "where the offender resides" presents an unresolved issue of fact, Defendant was convicted of a sex offense in 1983, qualifies as a sex offender under 42 U.S.C. §

3

16911(1), (4)–(5), and thus is required by SORNA to register in his state of residence. This registration requirement does not hinge on SORNA's implementation in the State of North Carolina.

B. SORNA Does Not Unconstitutionally Delegate Legislative Authority to the U.S. Attorney General

Defendant next argues that the congressional delegation to the Attorney General of the authority to decide whether SORNA is to be applied retroactively is constitutionally impermissible. Though Defendant finds a measure of support in Justice Scalia's dissenting opinion in *Reynolds v. United States*, 132 S. Ct. 975, 986 (2012) (Scalia, J., with Ginsburg, J., dissenting),[1] at least two panels of the Fourth Circuit Court of Appeals have rejected such non-delegation challenges, *United States v. Burns*, 418 F. App'x 209, 211–12 (4th Cir. 2011) (unpublished); *United States v. Stewart*, 461 F. App'x 349, 351 (4th Cir. 2012) (unpublished).

Congress may, and routinely does, delegate authority to the Executive Branch to implement legislative policy. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Mistretta v. United States*, 488 U.S. 361, 372 (1989) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). Even a general legislative directive is a

---

[1] Arguing that SORNA's registration requirements apply of their own force, without action by the Attorney General, and that section 16913(d) is best understood as conferring on the Attorney General an authority to make exceptions to the otherwise applicable registration requirements, Justice Scalia writes, "[I]t is not entirely clear to me that Congress can constitutionally leave it to the Attorney General to decide—with no statutory standard whatever governing his discretion—whether a criminal statute will or will not apply to certain individuals. That seems to me sailing close to the wind with regard to the principle that legislative powers are nondelegable."

4

constitutionally sufficient, intelligible principle "if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Id.* at 372–73 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

Here, the Court concludes, as did the Fourth Circuit in *Burns* and *Stewart*, that Congress provided an intelligible principle to guide the Attorney General in exercising his delegated authority. Congress stated that SORNA's purpose is "to protect the public from sex offenders and offenders against children" through "a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. With the failure-to-register statute, Congress criminalized a sex offender's failure to comply with SORNA's registration requirements, defining and specifically setting out the elements of that offense. 18 U.S.C. § 2250(a). The Attorney General's "authority both to 'specify the applicability' of SORNA with regard to pre-SORNA offenders and to prescribe registration rules for all pre-SORNA offenders and for other sex offenders who are unable to comply with the initial registration requirements," *United States v. Hatcher*, 560 F.3d 222, 227 (4th Cir. 2009) (quoting 42 U.S.C. § 16913(d)), therefore, has been substantially bounded by general policy and discernible boundaries, *Burns*, 418 F. App'x at 211.

Citing the clear articulation of an intelligible principle in SORNA to guide the Attorney General's exercise of authority, every Circuit that has ruled on non-delegation challenges to SORNA has rejected the contention. *See, e.g.*, *United States v. Guzman*, 591 F.3d 83, 93 (2d Cir. 2010) ("The Attorney General's authority under SORNA is highly circumscribed. . . . The Supreme Court has upheld much broader delegations than these."); *United States v. Whaley*, 577 F.3d 254, 264 (5th Cir. 2009) ("The delegation to the Attorney General to determine the retroactive applicability of SORNA is well within the limits of permissible delegation. SORNA's statement of purpose . . . is an intelligible principle that guides the Attorney General in

5

exercising his discretion."); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012) ("Congress's delegations under SORNA possess a suitable intelligible principle and are well within the outer limits of the Supreme Court's nondelegation precedents." (alterations and internal quotation marks omitted)). *United States v. Ambert*, 561 F.3d 1202, 1213 (11th Cir. 2009) ("We are satisfied that Congress has provided the Attorney General with 'intelligible principles' in the Sex Offender Registration and Notification Act."); *United States v. Dixon*, 551 F.3d 578, 584 (7th Cir. 2008) (rejecting a non-delegation challenge to SORNA by stating "[i]t is commonplace and constitutional for Congress to delegate to executive agencies the fleshing out of criminal statutes by means of regulations"), *rev'd*, *Carr v. United States*, 130 S. Ct. 2229 (2010). Therefore, the Court rejects Defendant's delegation argument.

C.  SORNA's Application Does Not Violate the Ex Post Facto Clause

Defendant has been charged with failing to register during the period after SORNA was enacted. Pursuant to the Fourth Circuit's analysis and holding in *United States v. Gould*, 568 F.3d 459, 466 (4th Cir. 2009) ("Because [the defendant] was punished for his conduct after enactment of the SORNA provision criminalizing the conduct, his punishment does not violate the Ex Post Facto Clause."), the Court rejects Defendant's challenge to SORNA as a violation of the Ex Post Facto Clause of the U.S. Constitution.

D.  SORNA Does Not Violate the Commerce Clause

Under the Commerce Clause, Congress has power to regulate "three broad categories of activity" under the Commerce Clause: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558 (1995) (citations

omitted).

Section 2250(a) creates a federal crime when an individual (1) is required to register under SORNA; (2) travels in interstate or foreign commerce; and (3) knowingly fails to register as a sex offender as required under SORNA. Section 2250(a) thus contains an express jurisdictional trigger—the interstate travel element—that places the statute squarely within Congress's authority to regulate and protect the instrumentalities of interstate commerce, including "persons or things in interstate commerce." *Cf. Lopez*, 514 U.S. at 558 (addressing a statute that did not require an interstate jurisdictional nexus); *United States v. Morrison*, 529 U.S. 598, 613 (2000) (same). Because section 2250(a) requires the use of a channel of interstate commerce, and therefore falls within the first and second categories of activity Congress can regulate under the Commerce Clause, it is not subject to the same limiting interpretation as in *Lopez*.

In light of SORNA's commerce component, which must be satisfied by the sex offender's post-conviction travel to another state and failure to register as required, the Fourth Circuit has appropriately concluded that "[section] 2250(a) does not violate the Commerce Clause . . . ." *Gould*, 568 F.3d at 471. Defendant acknowledges this decision as binding upon this Court. (Doc. 12 at 9 n.4.) Accordingly, the Court rejects Defendant's Commerce Clause argument.

E.  Defendant Received Adequate Notice of SORNA's Registration Requirements

Defendant contends that because he was not notified of a duty to register under SORNA, it is a due process violation to charge him with the offense.

SORNA tasks the Attorney General with providing notice of SORNA registration duties to previously convicted offenders who are not in custody. 42 U.S.C. § 16917. To be convicted

under 18 U.S.C. § 2250(a), an offender must "knowingly fail[ ] to register or update a registration as required by [SORNA]." Defendant argues that he could not have knowingly violated SORNA without additional notice from the Government. This claim, "when boiled down to its essence, amounts to an 'ignorance of the law argument.'" *United States v. May*, 535 F.3d 912, 921 (8th Cir. 2008).

As in *Gould*, 568 F.3d at 468–69, Defendant relies on *Lambert v. California*, 355 U.S. 225 (1957). However, *Lambert*'s holding applies when a "person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case." *United States v. Gould*, 526 F. Supp. 2d 538, 544 (D. Md. 2007) (quoting *Lambert*, 355 U.S. at 228). Unlike the ordinance in *Lambert*, which "require[d] all members of the broad class of all felons to register, however, SORNA criminalizes the failure to register of a much more narrowly targeted class of persons in a context where sex-offender registration has been the law for years . . . ." *Gould*, 568 F.3d at 468. Indeed, Defendant has been subject to and compliant with New York's registration scheme since 1996. Therefore, Defendant's due process rights, based on lack of notice, have not been violated. *See id.* at 469 (citing *United States v. Hinckley*, 550 F.3d 926, 938 (10th Cir. 2008) (holding that notice of the duty to register under state law provides notice of the duty to register under SORNA)); *see also United States v. Rogers*, 468 F. App'x 359, 361 (4th Cir. 2012) (unpublished) (rejecting a due process challenge to SORNA); *cf. United States v. Smith*, 528 F. Supp. 2d 615, 620 (S.D.W. Va. 2007) (holding that, because the Attorney General did not promulgate the Interim Rule until February 2007, the Government failed to provide the defendant adequate notice of his SORNA reporting obligations in November 2006).

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss (Doc. 12) be **DENIED**.

Signed: August 24, 2012

*/s/ Richard L. Voorhees*
Richard L. Voorhees
United States District Judge